IN ADMIRALTY.—JANUARY, 1856.

## CHARLES SCUDDER AND CHARLES W. DAVID WEEKS.

The first section of the Act of 1848, to prevent special pleading, does not require the verification of libels in admiralty or bills in equity.

The court allowed ten per cent. damages for the cost of re-exchange, in a suit upon a bill of exchange drawn upon parties in New York.

The holders are entitled to recover the expense of a re-exchange, although they do not actually re-draw for the amount of the dishonored bill.

Interest allowed on the amount of the bill at the legal rate in New York, where it was payable.

The following is the decision of JUDGE ROBERTSON, acting as Chief Justice:

This is a suit brought by the libellants, Charles W. Scudder & Co. of Boston, Massachusetts, against the respondent, who is master of the American whaleship "Delta," upon a bill of exchange for $1,292 49, drawn by the respondent, at Honolulu, on the 10th day of March, 1855, for supplies furnished to the "Delta," by A. J. Cartwright, to whom the said bill of exchange was delivered by the respondent, and by whom it was transferred to the libellants before it became due.

The bill of exchange is drawn upon Messrs. Willets & Co. of New York, to whom it was duly presented for acceptance and payment, which was refused, whereupon the bill was protested in due form and returned to the libellants' agent here.

The respondent, in his answer, admits the facts upon which the suit is founded, as set forth in the libel, reserving his right to move the court to dismiss the suit on the ground that the libel is not verified in the manner required by our laws.

The respondent's proctor did, accordingly, make a motion at the hearing, that the libel be dismissed on the ground above stated, and cited in support of his motion the first section of the "Act to prevent special pleading," passed in 1848, which reads as follows:

"That in every civil action hereafter to be tried in any of the

Courts of Record in this Kingdom, such action shall be commenced by petition, which petition shall be verified by the oath of the plaintiff or some one on his behalf."

The libel in this case is verified by the oath of Charles Brewer, 2nd, who swears that the facts set forth therein are true, to the best of his knowledge and belief. Respondent's counsel contends that this is not sufficient, and that the construction given to the statute, by the full court, in the case of Morgan *vs.* Manuel, (see *Polynesian* of March 24, 1855,) must be adhered to in the present case.

It will be seen by reference to the latter part of that decision that the opinion of the court was based rather upon the necessity of construing the statute strictly, in accordance with the evident intention of the legislature, in regard to cases to which it clearly applies, than upon any absolute necessity that exists of having petitions verified in a particular way, in all cases whatsoever.

On reference to the case of Thomas Spencer *vs.* Bailey & Gilbert, (in admiralty) cited by counsel for the libellants, which was heard by CHIEF JUSTICE LEE, I find that the respondents' counsel in that case made an objection to the process of attachment by which the ship " Nile" was seized, on the ground that it was not issued according to the form prescribed for courts of law by our statutes.

The learned CHIEF JUSTICE while overruling the objection, on the ground that the process was issued in accordance with the practice of courts of admiralty, said. in speaking of the statute there cited by respondents' counsel, " The cases therein referred to have no relation whatever to the court of admiralty, whose rules, process and practice are entirely of another nature." Farther on, he says, "Our admiralty practice has not been prescribed by our statutes, except to a limited extent in a very few instances, and, where it is not prescribed, our courts are left free to adopt so much of that of England, France, the United States and other maritime countries, as they may think wise, just, and best adapted to the circumstances of this country."

In construing the first section of the statute of 1848, and when we wish to ascertain the intention of the legislature in its enactment, we must look at the statute as a whole, and so we must look at it when we are called upon to answer the question, Does the first section of this statute apply to proceedings in admiralty? for if that section applies to these proceedings, then the other sections must be applied to them also. I have no hesitation in answering the question as to the first section, in the negative.

In a recent case, heard by me in equity, a question was raised as to whether or not the provisions of this statute were applicable to proceedings in chancery. I then stated my opinion that the statute was applicable only to proceedings at law; and I now feel perfectly justified in declaring that its provisions are not applicable to cases either in equity or in admiralty, both of which jurisdictions have a practice peculiar to themselves, all the world over, entirely distinct, and in many respects altogether different from the practice of courts of common law. Were a court of admiralty to be tied up and bound by the stringent and technical rules and practice of common law courts, it would forthwith be shorn of a valuable portion of its peculiar characteristics, so important in the eyes of all who understand the equitable

and liberal principles according to which the administration of justice is facilitated in admiralty courts.

I consider the verification of the libel in the present case as being quite sufficient, when taken in connection with the authority shown by Mr. Brewer, to institute the suit on behalf of the libellants.

The only question which remains to be disposed of is that of the damages, which the libellants claim as resulting from the non-acceptance and non-payment of the bill of exchange, as set forth in their libel. We have no statutory provision here as to the amount of damages to be allowed in such cases; nor has the question ever been settled by judicial decision; and I believe that no fixed usage on the subject has as yet been established among our merchants, who, I understand, have settled the few cases when bills have hitherto been sent back protested, by amicable arrangement.

Happily, in this case also there is no contest as to the amount of damages to be allowed the libellants, as it is agreed by counsel that ten per cent. is a fair amount to be claimed and allowed, for the cost of re-exchange.

In this instance the holders did not actually redraw for the amount of the dishonored bill, as they were entitled to do by mercantile law and usage, but whether they did so or not, makes no difference to their right to claim and recover from the drawer, the expense of a re-exchange. (See Story on Bills of Exchange, Sec. 401.)

The amount then for which the libellants are entitled to have judgment, is the face of the bill, $1292 49; with interest on the same at the rate of seven per cent. per annum, the legal interest in New York, from the 11th day of June last, when the bill was protested for non-payment, up to this date, say $56 54; and ten per cent. on the amount of the bill for cost of re-exchange, say $129 24, making in all the sum of $1478 27, besides the costs.

Let judgment be entered accordingly.

Mr. Bates, proctor for libellants.

Mr. Montgomery, proctor for respondent.

## IN BANCO.